# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| THE BRANSON LABEL, INC., a Florida Corporation,<br>　　　　　Plaintiff,<br><br>v.<br><br>THE CITY OF BRANSON, *et al.*,<br>　　　　　Defendants. | No. 6:14-cv-03220-GAF |

### DECLARATION OF MARVIN ELFANT

I, Marvin Elfant, declare as follows:

1. I am an adult resident of the State of Florida. I make this Declaration in support of Plaintiff's Suggestions in Response to Empire's Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction. I have personal knowledge of the facts in this declaration, know them to be true and correct, and could competently testify thereto if called as a witness in this matter.

2. I have been a resident of the State of Florida since 2006.

3. I am the sole member of ME Holding, LLC ("ME Holding"), a limited liability company organized under Delaware law with its principal place of business in the State of Florida.

4. ME Holding is the sole member of Nekome, LLC ("Nekome"), a limited liability company organized under Delaware law with its principal place of business in the State of Florida.

5. In the spring of 2013, I entered into negotiations, as a representative of Nekome, with Peter and Darlene Rea (the "Reas") to obtain an assignment of 100% of the stock in The

Branson Label, Inc., a Missouri corporation ("Missouri Branson Label").

6. On July 18, 2013, Nekome and the Reas entered into an oral agreement for the purchase and sale of 100% of the stock in Missouri Branson Label (the "July 18 Agreement"). Under the terms of the July 18 Agreement, the Reas agreed to assign 100% of the stock in Missouri Branson Label to Nekome. In consideration of the assignment, Nekome agreed to pay the Reas cash consideration, cause Missouri Branson Label, which had been involuntarily dissolved, to be reinstated, fund and pursue Missouri Branson Label's claims with respect to certain real property located in Taney County, Missouri (the "Subject Property"), and allow the Reas to participate in any resulting recovery.

7. The negotiations between Nekome and the Reas were arm's-length negotiations. Prior to the July 18 Agreement, Nekome, ME Holding, and I had no prior business, personal, or other relationship with the Reas or any of their entities or affiliates. The negotiations between Nekome and the Reas were business negotiations between adverse parties pursuing their own respective interests.

8. Nekome proceeded to perform its obligations under the July 18 Agreement, commencing in July 2013 and continuing through the present.

9. Notwithstanding Nekome's substantial performance of the July 18 Agreement, the Reas refused to assign and transfer the Missouri Branson Label stock to Nekome.

10. For several months in late 2013 and early 2014, Nekome sought to resolve the Reas' non-performance of the July 18 Agreement through direct discussions with the Reas. By April 2014, these discussions had failed to result in performance by the Reas.

11. By April 2014, Nekome was becoming concerned with the delay by the Reas in transferring the stock of Missouri Branson Label.

12. In light of these concerns, on April 4, 2014, Nekome commenced litigation against the Reas in the U.S. District Court for the Western District of Missouri, captioned *Nekome, LLC v. Peter Rea and Darlene Rea*, Case 6:14-cv-03153-JFM (W.D. Mo.) (the "Nekome Litigation"), to enforce the July 18 Agreement. The claims asserted in the Nekome Litigation included breach of oral contract, specific performance, and unjust enrichment.

13. Following commencement of the Nekome Litigation, Nekome and the Reas entered into a settlement agreement under which, *inter alia*, the Reas agreed to perform their obligations under the July 18 Agreement, and Nekome agreed to dismiss the Nekome Litigation.

14. The Reas transferred 100% of the stock in Missouri Branson Label to Nekome on May 2nd, 2014, and the Nekome Litigation was thereafter dismissed.

15. All proper corporate formalities were observed in transferring the stock of Missouri Branson Label to Nekome.

16. Prior to acquiring the stock of Missouri Branson Label, Nekome had no assets, offices, or physical presence of any kind in Missouri.

17. As Nekome proceeded towards completing the acquisition of 100% of the stock of Missouri Branson Label, it asked its tax advisor, Levine & Seltzer LLP ("L&S"), to recommend an appropriate business and tax structure for Missouri Branson Label following its acquisition.

18. In requesting a recommendation from L&S, Nekome sought to identify the optimal business and financial structure following the acquisition of Missouri Branson Label.

19. On April 25, 2014, L&S recommended that Nekome merge Missouri Branson Label into a Florida corporation, Branson Label, Inc. ("Branson Label") thereby reincorporating

3

it in Florida. A true and authentic copy of the letter from L&S setting forth its recommendations is attached hereto as **Exhibit A**.

20. The reasons provided by L&S for the merger of Missouri Branson Label into Branson Label were unrelated to the creation of diversity jurisdiction. Rather, its recommendations were based on sound business justifications.

21. L&S noted the sole member of Nekome was ME Holding, and I was the sole member of ME Holding. Nekome's principal place of business and my residence are the same address, 16620 Senterra Drive, Delray Beach Florida. Substantially all of Nekome's and my business and investment activities are coordinated from Florida. Nekome, ME Holding, and I do not engage in any business operations in Missouri, other than the contemplated passive investment in Missouri Branson Label.

22. L&S recommended Nekome form a new Florida corporation, Branson Label, and that Missouri Branson Label be merged into the new Florida entity. Branson Label would then elect to be treated as an S-Corporation for purposes of federal income taxes, with its income or capital gains flowing through Nekome to ME Holding, and ultimately to me.

23. L&S explained its recommendation. First, it noted that, "neither you [Elfant], nor your business entities, ME Holding or Nekome, have any other operations, assets or presence in the State of Missouri other than Nekome's investment in the shares of [Missouri Branson Label]," and "[t]he funds provided to Nekome and ME Holding were provided by and managed by Elfant from your place of business in Florida and have no nexus to the State of Missouri."

24. Second, L&S suggested that Branson Label be organized "to take advantage of opportunities to lower its tax burden." L&S advised that Florida "does not impose an Income Tax on individuals," and that Florida corporations electing S-Corporation status are usually

4

exempt as well. By contrast, if Branson Label were to remain a Missouri corporation, its income would be "passed on to its shareholders," and any income to Missouri Branson Label thus "could be considered Missouri source income derived from the asset located in the State of Missouri and the shareholders would be subject to Missouri Income Tax." By merging Missouri Branson Label into the new Branson Label, a Florida entity, its income "would be attributed to the Florida shareholder and should not be considered as Missouri based income."

25. For these reasons, L&S concluded, "we recommend that [Branson Label] be reincorporated in Florida by virtue of a merger into a new Florida entity."

26. After careful consideration, Nekome decided to accept L&S's recommendations and to merge Missouri Branson Label into a Florida corporation, Branson Label. Nekome based this decision on business considerations, not its impact on diversity jurisdiction.

27. The merger of Missouri Branson Label and Branson Label followed all proper corporate formalities.

28. The Reas have no ownership interest in Nekome, ME Holding, or Branson Label, are not officers, directors, managers, or employees of any of those entities, and have no authority or control over the entities or the above-captioned litigation.

29. During the period of time we negotiated the acquisition of Missouri Branson Label, planned the litigation to force its acquisition, acquired it, merged Missouri Branson Label into Branson Label, and conducted the affairs of Branson Label, I conducted most of those business activities from 16620 Senterra Drive, Delray Beach Florida, and none of them in Missouri.[1]

---

[1] Prior to 2006, my permanent residence was in NJ. Beginning in 2006, my permanent residence has been in FL. My wife's primary health care providers are in NJ, and we occasionally need to spend more time there than we would otherwise spend to address her health needs. While I have spent some part of the time since May 2nd in NJ, in part to address my wife's health needs, my Delray Beach, FL residence remains my permanent residence and the location

30. The business activities of Missouri Branson Label and the post-merger Branson Label have included: directing and overseeing this lawsuit and a second lawsuit pertaining to the Subject Property (the "Branson Label Lawsuits"); conferring with and directing counsel in connection with the Branson Label Lawsuits; reviewing and revising pleadings, declarations, and other court papers in connection with the Branson Label Lawsuits; and funding the Branson Label Lawsuits.

31. Branson Label has been actively engaged in the foregoing business activities, and has committed substantial time and resources to these activities. Most of Branson Label's activities and conduct relating to the Branson Label Lawsuits have occurred within Florida, from 16620 Senterra Drive, Delray Beach Florida. Other than directing its counsel to file the Branson Label Lawsuits in the U.S. District Court for the Western District of Missouri, where the Subject Property and many of the defendants are located, Branson Label has engaged in no business or other activities in the State of Missouri since May 2nd, 2014. In short, the State of Florida (and to a lesser extent the State of New Jersey), but not the State of Missouri, has been the "nerve center" of Branson Label's business activities.

32. To the best of my knowledge and understanding, Branson Label has carried out its business activities in the State of Florida in full compliance with federal, state, and local laws, rules, and ordinances.

33. It is my understanding that I am permitted under the zoning laws of Palm Beach County, FL to engage in business activities such as the above-described activities of Branson Label out of my residence so long as I comply with certain restrictions. To the best of my knowledge and understanding, Branson Label has carried out its business activities in

---

from which Branson Label's affairs, along with those of Nekome and ME Holdings, are principally managed. The only other state which could even be argued to be Branson Label's principal place of business is NJ.

6

compliance with these restrictions. Its business activities are incidental and subordinate to the residential use of my property. They are confined to no more than ten percent of the total floor area of the dwelling. They are conducted within the principal dwelling and not in an accessory building or structure or within any open porch or carport. They have not changed the residential character of the dwelling. They are conducted solely by a resident of the dwelling (me). I have not advertised or displayed any external evidence of or sign for Branson Label. Branson Label does not engage in the sale of any stock, trade, supplies, products, or services on the premises. It does not store any equipment or materials outside of the dwelling. It does not involve the use of any mechanical, electrical or other equipment, materials or items which produce noise, electrical or magnetic interference, vibration, heat, glare, smoke, dust, odor or other nuisance outside the residential building.

  34. It is my understanding, on behalf of Branson Label, that Branson Label is not yet required to obtain a "business tax receipt" as defined by Section 17-17 of the Palm Beach County Code ("Section 17-17"), attached as Exhibit C to Empire's Suggestions in Support of Empire District Electric Company's Motion to Dismiss Under Rule 12(b)(1) and 28 U.S.C. § 1359 for Lack of Subject Matter Jurisdiction (the "Empire Brief"). Branson Label's business activities to date have not resulted in sales, revenues, or other taxable activity that would require it to pay any state, county, or local taxes for which a "business tax receipt" may issue. Branson Label has conferred with its tax advisor, and does not believe it is presently subject to the "business tax receipt" provision of Section 17-17. Nonetheless, if this were to change, or if Branson Label were later to be advised by its tax advisor, legal counsel, or an appropriate government authority that it is required to obtain a "business tax receipt," it will apply for and obtain such a receipt

promptly in accordance with such advice. Branson Label has not refrained from engaging in the above-described business activities based on the absence of a "business tax receipt."

35. It is also my understanding, on behalf of Branson Label, that Branson Label's business activities in the State of Florida are in compliance with and do not violate any restrictive covenant. To the best of my knowledge and understanding, the property at 16620 Senterra Drive, Delray Beach Florida is not subject to any restrictive covenants prohibiting the participation in and management of litigation at that address. Branson Label has reviewed Exhibits D and E accompanying the Empire Brief, and has conferred with its tax and legal advisors, and is unable to identify any restrictive covenant violated by its activities at 16620 Senterra Drive, Delray Beach Florida. Branson Label is not operating any model home, parking lot, or sales office out of the Lot located at 16620 Senterra Drive, Delray Beach Florida, nor is it "using" the Lot for any similar purpose. Participation in and management of the Branson Label Lawsuits does not violate the terms of any restrictive covenant, nor does it detract from or impede the residential character of the Lot or the neighborhood.

36. My residence in Florida, located at 16620 Senterra Drive, Delray Beach Florida, which is also the business address for Branson Label, is listed for sale.

37. I have resided in Florida since 2006, and have no plans to move either my residence or my businesses out of the state.

38. If and when I sell my current residence, I will move to another residence within Florida. My businesses, including Branson Label, will move with me to the new Florida address, and will remain in Florida as their principal place of business.

I certify, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

_____
Marvin Elfant

# EXHIBIT A

## TO DECLARATION OF MARVIN ELFANT

LEVINE & SELTZER LLP
CERTIFIED PUBLIC ACCOUNTANTS
150 EAST 52ND STREET
NEW YORK, NEW YORK 10022

(212) 486-5500
FAX: (212) 486-6768

April 25, 2014

To:   Marvin Elfant

Re: Reorganization of Branson Label, Inc.

Dear Marvin:

We understand that your LLC, ("Nekome"), which is organized as a Delaware, LLC, is contemplating a purchase of 100% of the shares of The Branson Label, Inc., ("BL") a corporation organized under the laws of the State of Missouri and an entity with no active business operations and whose only assets are real estate investments located solely within the state of Missouri.

For background purposes, the Sole Member of Nekome is a Delaware LLC named ME Holding, LLC, and that you are the sole member of ME Holding, LLC and that you ("Elfant") are a resident of the State of Florida.

Nekome's principal place of business and your residence is 16620 Senterra Drive, Delray Beach Florida, and that you became a resident of the State of Florida in 2006 Your joint Federal Income Tax returns are filed as a Florida Resident and are filed with the IRS center in Austin Texas or electronically. All of your .business related and investment activities are coordinated by you within the State of Florida.

Nekome, ME Holding, LLC and you personally do not engage in any other business operations in the State of Missouri, other than the contemplated passive investment in BL.

Nekome and its sole member ME Holding, LLC were organized to finance the on- going litigation in the Missouri Court System of the case "Empire District Electric Co. et al vs. Douglas L Coverdell,"(Coverdell") et al case number 03CV787034 and its related cases. These lawsuits relate to determining the party that has legal title to approximately 27 acres of land on which the "Branson Landing", a mixed use retail, convention, and entertainment complex was constructed in Branson Missouri.

In connection with this matter, the acquisition of the stock of Branson Label, a Missouri Corporation was deemed by you to be an important element in the legal strategy to realize a successful on your investment.

Given these facts, you have asked us for our recommendations regarding whether it would be advisable to reorganize BL outside the State of Missouri.

Discussion

We recommend that a new Florida Corporation, The Branson Label, Inc. (Florida) be incorporated under the laws of the State of Florida, and that BL (Missouri Corp.) be merged into the new Florida Corporation. The new Corporation will then elect to be treated as an S-Corporation for Federal Income Tax purposes, with its income or capital gains flowing through Nekome, to ME Holding and ultimately to its sole member Elfant.

We are recommending this structure because neither you, nor your business entities ME Holding, or Nekome have any other operations, assets or presence in the State of Missouri other than Nekome's investment in the shares of BL.

Nekome and ME Holding LLC 's role in this venture was to provide investment funds to allow Mr. Coverdell to continue to pursue his claims that his property, was improperly taken and built upon. The funds provided to Nekome and ME Holding were provided by and managed by Elfant from your place of business in Florida and have no nexus to the State of Missouri.

A business structure may be organized to operate within the laws and regulations available to it and organizing a business to take advantage of opportunities to lower its tax burden. Selecting a structure that allows reduced taxes is a valid reason for choosing an alternative structure. The State of Florida does not impose an Income Tax on individuals. While Florida residents do not have to pay Florida state income taxes, the same is not true for all types of businesses They must file a return even if no tax is due. Sole proprietorships, individuals, estates of decedents, and testamentary trusts are exempted and do not have to file a return. S Corporations are usually exempt as well, unless federal income tax is owed. The Florida Corporate Income Tax rate is 5.5%

BL is currently organized as a Missouri Corporation and we understand, has elected Sub-chapter S status for Federal Income Tax purposes. Missouri recognizes Sub-Chapter-S status for purposes of its State income tax, and as such, the income of the corporation is not subject to tax but is passed on to its shareholders. If BL were to remain a Missouri Corporation and it were to receive a settlement of the litigation it intends to institute to pursue its claims, such income could be considered Missouri

source income derived from the asset located in the State of Missouri and the shareholders would be subject to Missouri Income Tax.

If the Corporation were to be merged into a new Florida entity, The Branson Label, Inc. (Florida), the income could be characterized as Florida based income. Such income would be attributed to the Florida shareholder and should not be considered as Missouri based income even though the property on which the award was received is located in the State of Missouri. This is the position we discussed taking.

Given these facts, that you have no other presence individually or through investments and do not conduct business within the State of Missouri and the fact that the State of your residence offers tax advantages, we recommend that BL be reincorporated in Florida by virtue of a merger into a new Florida entity.

Elliot H. Levine,

Levine & Seltzer LLP

# EXHIBIT 2

IN THE CIRCUIT COURT OF TANEY COUNTY, MISSOURI

Peter H. Rea and Darlene Weaver Rea,
         Plaintiffs

-v-
         ) Case No. CV795-177CC

The Branson Label Inc.
         Defendants

## JUDGMENT

The Petition against The Branson Label, Inc. is filed and does come on to be heard; the defendant, The Branson Label Inc does make its entry of appearance, its consent to trial and hearing and does file the answer; trial by Court and the Petition being duly verified; the Court grants relief under Rule 87 as follows:

1. The petition is true in substance and in fact.

2. The Correction Deed at Book 317 pages 770-771 is ordered stricken and for naught held and of no force and effect and same by reason of inadvertance and mistake is a nullity.

3. The Deed at 302-page 1758 is a straw conveyance for purposes of compliance with the 6/13/88 marriage contract and the later incorporation and the conveyance to The Branson Label Inc. (subject to such interest as the five Rea children may have) all as per the deed at Book 316-Page 2912-2929 Records of Taney County, Missouri.

4. That upon the execution of the deed to The Branson Label Inc. and the rendition of this judgment the marriage contract has been complied with in that Darlene Weaver Rea is in fact the only shareholder of The Branson Label Inc.

5. That the lands that came from the marriage of Peter H. Rea and Karen G. Rea are now vested in The Branson Label Inc. subject to the interest of the Rea children aforesaid.



FILED
-2-
1995 FEB 24 PM 3:46

KAY ELL
CIRCUIT CLERK

6. A copy of this judgment may be recorded in the land records of Taney County and the title examiner may refer to it when the lands in the deed at Book 316- Page 2912-2929 are in question.

7. The five Rea children are not a party to this Rule 87 litigation and their interest is not adjudicated except to order that Darlene Weaver Rea has the sole wife's ownership as per the marriage contract.

So Ordered on the day and year first written.

Done in Forsyth, Missouri

24 day of FEB, 1995

Judge

# EXHIBIT 3

**County Administrator**
Robert Weisman



# Palm Beach County Zoning Division
## Home Occupation Business Tax Receipt
### Certificate of Compliance
Unified Land Development Code (ULDC) Article 4.B.1.A.70
For a typeable version of this form visit the PBC Zoning Web Page at:
http://www.pbcgov.com/pzb/zoning/newapps/Form-103.pdf

**70. Home Occupation**
A business, profession, occupation, trade, artisan, or handcraft conducted in a dwelling unit for commercial gain by a resident of the unit. A home occupation shall not include those businesses, which are required by State of Florida agencies to be open to the public.

**a. Incidental Nature**
Shall be clearly incidental and subordinate to the residential use of the dwelling property and shall be confined to no more than ten percent of the total floor area of the dwelling.

**b. Location**
With the exception of outdoor instructional services, a home occupation shall be conducted within the principal dwelling or off-site, and shall not be conducted within any accessory building or structure or within any open porch or carport that is attached to and part of the principal structure. Instructional services, which by their nature must be conducted outside of the principal structure, such as swimming lessons, shall be located in a rear or side yard.

**c. No Change to Character of Dwelling**
The residential character of the dwelling in terms of exterior appearance and interior space shall not be altered or changed to accommodate a home occupation.

**d. Employees**
Shall be conducted by members of the immediate family residing in the dwelling unit only. A maximum of one person who is not a member of the immediate family may assist in the operation of the home occupations at the residence.

**e. Business Tax Receipt**
Shall be operated pursuant to a valid business tax receipt for the use conducted by the resident of the dwelling. More than one home occupation may be permitted on a residential lot.

**f. Advertising**
No external evidence or sign shall advertise, display, or otherwise indicate the presence of the home occupation, nor shall the street address of the home occupation be advertised through signs, billboards, television, radio, or newspapers. Advertising on vehicles shall be limited to the minimum necessary to meet requirements mandated by F.S. Chapter 489 or Chapter 67-1876 of the PBC Contractor's Certification Division Manual.

**g. On-Premise Sales**
A home occupation shall not involve the sale of any stock, trade, supplies, products, or services on the premises, except for instructional services.

**h. Instructional Services**
Instructional services shall meet the following additional regulations:

**1) Home Instruction, Inside**
Teaching which takes place inside the dwelling unit of the instructor. Typical instruction includes music lessons and academic tutoring.

**2) Home Instruction, Outside**
Teaching which takes place outside the dwelling unit, on the property of the instructor. This type of instruction is limited to subject matter which necessitates outside instruction. Typical instruction includes tennis, swimming lessons, dog training and equestrian lessons.

**3) Hours of Operation**

Instruction shall occur only between the hours of 9:00 a.m. and 8:00 p.m. daily.

**4) Insurance**
Proof of liability insurance in the amount of at least $300,000 covering the instructional service shall be submitted prior to the issuance of a Business Tax Receipt.

**5) Number of Students**
A maximum of three students at a time shall be permitted to receive instruction during a lesson.

**6) Parking**
No more than two vehicles associated with the lessons shall be permitted to be parked at the instructor's home at any time.

**7) Resident**
The instruction must be conducted by a resident of the dwelling where the lessons are provided. Only one instructor shall be permitted to provide instruction. The business tax receipt shall be issued to the instructor.

i. **Outside Storage**
No equipment or materials used in the home occupation shall be stored or displayed outside of the dwelling, including driveways.

j. **Nuisances**
No home occupation shall involve the use of any mechanical, electrical or other equipment, materials or items which produce noise, electrical or magnetic interference, vibration, heat, glare, smoke, dust, odor or other nuisance outside the residential building. There shall be no storage of hazardous or noxious materials on the site of the home occupation. There shall be no noise of an objectionable nature from the home occupation audible at adjoining property lines.

k. **Violations or Hazard**
If any of the above requirements are violated, or if the use, or any part thereof, is determined by the Zoning Director to create a health or safety hazard, then the business tax receipt may be revoked.

l. **Vehicles**
One business related vehicle per dwelling unit not over one ton rated capacity may be parked at the home, provided the vehicle is registered to a resident of the dwelling & meets the resident parking code, commercial vehicles are prohibited.

**I have read and understand the Palm Beach County Zoning Division Home Business Tax Receipt Affidavit and the thresholds associated with a Home Office Use as described in this Affidavit and pursuant to the ULDC. I understand that by signing the Palm Beach County Zoning Division Home Business Tax Receipt Affidavit, I agree to comply with the Palm Beach County ULDC provisions, as outlined in Article 4.B.1.A.70, Home Occupation. Furthermore, I understand that the Home Business Office is for administrative purposes only or instructional services as further defined in the ULDC, Article 4.B.1.A.70, Home Occupation (Customary functions include: telephone, scheduling appointments, bookkeeping, computer work, and home instruction). For additional information, please access the ULDC at http://www.pbcgov.com/pzb/uldc/articles/Article 4.pdf.**

## CERTIFICATE OF COMPLIANCE

I have read and understand the above regulations for home occupation (as Administrative Offices, or those Instructional Services specified only). I am aware of my responsibilities and liabilities for the use and occupation on the property. I do hereby covenant and agree to abide by each of the aforesaid stipulations. I further understand that any violation of the stipulations may result in possible code enforcement action and/or revocation of the Business Tax Receipt.*

Applicant Name:_____

Business Name:_____

Business Address:_____

Property Control Number (PCN): _____

Occupation: _____

Signature of Applicant:_____Date_____

*It is the applicants responsibility to complete the most current form. Current forms are obtained by visiting: http://www.pbcgov.com/pzb/zoning/newapps/Form-103.pdf*