IN THE STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| THE BRANSON LABEL, INC., a Florida Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 6:14-cv-03220-GAF ) ) |
| THE CITY OF BRANSON, MISSOURI, et al., | ) ) ) |
| Defendants. | ) |

**THE CITY OF BRANSON'S SUGGESTIONS IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
PURSUANT TO RULE 12(b)(1) AND 28 U.S.C.§1359**

The present suit is one of three suits recently filed in the Western District of Missouri[1] and another in a long line of suits filed[2] involving the Branson Landing property in Taney County, Missouri. The present suit improperly and collusively asserts diversity jurisdiction, fails to state a cause of action upon which relief can be granted, and is filed

---

[1] The Branson Label, Inc. vs. City of Branson, Cause No. 14-cv-3220; The Branson Label, Inc. v Aeropostale, Inc., et al., Case No. 14-cv3222; and Nekome, LLC v. Peter and Darlene Rea, Case No. 14-cv-03153.

[2] Peter Peter H. Rea and Karen G. Rea v. Empire District Electric Company, docketed as Case No. 4003, Taney County Circuit Court, filed 4-4-77; Peter H. Rea and Karen G. Rea v. The Empire District Electric Company, docketed as Case No. C0783-55CC, Taney County Circuit Court, filed 3-8-83; Tori, Inc. by its statutory Trustee, Darlene Weaver Rea and Peter H. Rea and Darlene Weaver Rea v. The Empire District Electric Company, docketed as Case No. CV793-299CC, Taney County Circuit Court, filed 5-13-93; Peter H. Rea and Darlene Weaver Rea v. The Branson Label, Inc., docketed as Case No. CV795-177CC, Taney County Circuit Court, filed 2-28-95; Empire District Electric Company, et al. v. The Branson Paper, Inc., et al., 03CV787034, Taney County Circuit Court, filed 7-18-03, appealed at Empire District Electric Company, et al. v. Coverdell, et al., 344 S.W.3d 842 (Mo.App. S.D. 2011); Bank of America, et al. v. Douglas L. Coverdell, et al., 11AF-CC00244, Taney County Circuit Court, filed 3-29-2011; Coverdell Enterprises, Inc. v. Empire District Electric Co., et al., 08AF-CV00491, Taney County Circuit Court, filed 6-24-08; Coverdell v. Branson Label, Inc. Cause No. 1422-CC00761, City of St. Louis

1

beyond the statute of limitations, among other improprieties that affect the validity of this action.

> **I.     Background**

Plaintiff's cause of action is for inverse condemnation and asserts that property it "owned" was taken by the City of Branson and redeveloped on May 15, 2004. However, Plaintiff was not formed as a Florida corporation until May 8, 2014 (Doc. 22-6) and thus not in existence when the taking allegedly occurred. This particular suit was filed on the heels of a decade long quiet title action in Taney County, Missouri. In 2012, two different Taney County judges quieted title to the property at issue in this case. (See **Exhibit A** and **Exhibit B** attached hereto and incorporated herein). Like the Plaintiff here, the parties involved in the suits in Taney County, Douglas Coverdell and Coverdell Enterprises, also claimed to have derived their interests in the property from Peter Rea[3], a disbarred attorney and former judge in Taney County, Missouri, by virtue of the same defective deed on which Branson Label, Inc.'s claim is based.[4]

Until four days before this suit was filed, Branson Label, Inc. was a Missouri corporation formed and owned by Peter Rea. The "merger" with a corporation created in Florida just days before this suit was filed is a pretext and was collusively undertaken solely for the purpose of establishing diversity jurisdiction.

---

[3] Mr. Rea has been sanctioned for making false claims and filing false pleadings in the past. See Rea v. Moore, 74 S.W.3d 795 (Mo.App. 2002), attached hereto as **Exhibit C.**
[4] See Empire District Electric Co. v. Coverdell, et al., 344 S.W.3d 842 (Mo.App. S.D. 2010). "While we do not so hold, as best we can ascertain, [the Hoke to Tori quit claim] deed appears to convey more to Tori, Inc. than was deeded to the Hokes by the McBrides." Empire at 846-47, fn. 8. "As best we discern and without so holding, this legal description includes the entirety of the peninsula at issue with a specific exception for that portion awarded to Branson in the 2004 Judgment, and it also appears to include a much larger tract of real property adjacent to the south boundary of the peninsula." Empire at 848-49.

2

Case 6:14-cv-03220-GAF   Document 31   Filed 07/09/14   Page 2 of 17

Moreover, this suit was filed outside the statute of limitations - on May 13, 2014. This suit was also filed just days before and after Douglas Coverdell and Coverdell Enterprises, Inc. filed their two Appellate Briefs in connection with the appeal of the Taney County judgments referenced above. Seeking a reversal of the judgments, Coverdell asserted on appeal the argument that Branson Label, Inc., Plaintiff in this suit, was an indispensable party to the Taney County suit and attached this Complaint to support his argument for reversal.[5] The timing of the "merger" and the filing of this lawsuit is no mere coincidence. This meritless Complaint should be dismissed.

**II.     Standard**

Fed. R. Civ. P. 12(b)(1) and 12(h)(3) provide that the Court must dismiss a claim if it lacks subject-matter jurisdiction. Eubank v. Kan. City Power & Light, 2009 U.S. Dist. LEXIS 33030, 2009 WL 1033824 (W.D. Mo. Apr. 17, 2009). "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citations omitted). Plaintiff's claims must be dismissed because Plaintiff has improperly or collusively formed a corporation to bring this suit and therefore this Court has no jurisdiction based on 28 U.S.C. §1359.

When hearing a factual attack on the complaint's jurisdictional allegations, "the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." Id. (citing Land v. Dollar, 330 U.S. 731, 735 n.4,

---

[5]. It is also obvious that this Complaint was filed to support the two state court appeals because: (1) this suit was filed 8 days before Coverdell filed his first appellant brief and 10 days after he filed his second appellant brief where he first attached this Complaint; (2) in his brief Coverdell sought for the first time reversal based on the argument that Branson Label, Inc. was an indispensable party to the Taney County proceedings and (3) he attached a copy of the Complaint to his second appellate brief which is improper because the Complaint was never before the trial court.

67 S. Ct. 1009, 91 L. Ed. 1209 (1947)). No presumption of truthfulness attaches to a plaintiff's allegations regarding subject-matter jurisdiction "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. at 593 n.1 (citation omitted). On a Rule 12(b)(1) motion, courts may consider matters outside the pleadings when parties make "factual" (as opposed to "facial") challenges to subject matter jurisdiction). Osborn v. United States, 918 F.2d 724, 728 n.4 (8th Cir. 1990). "It is to be presumed that a cause lies outside [the federal court's] limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (internal citations omitted).

### III. The "Merger" that allowed Plaintiff to allege Diversity of Citizenship was pretexual.

A factor strongly considered by federal courts in deciding whether federal jurisdiction is proper is the <u>timing</u> of the assignment or merger that gave rise to diversity jurisdiction. Branson Label, Inc. was a Missouri corporation for 22 years until just four days before filing suit[6]. "A change of state of incorporation by a party shortly before an action is instituted which creates diversity, will raise a question as to the good faith and propriety of such action." Prudential Oil Corporation v. Phillips Petroleum Company, 546 F.2d 469 (2nd Cir. 1976). For example, in Wiregrass Homebuilders, Inc. v. Inv. Acquisitions Group, LLC, 2011 U.S. Dist. LEXIS 85672; 2011 WL 3349823, in dismissing the case, the Court found that the execution of assignments within seven (7)

---

[6] Plaintiff attempts to explain away this key timing component by complaining that the Reas reneged on their agreement to sell the stock to another Marvin Elfant entity, Nekome, LLC, thus delaying the filing of the suit. See **Exhibit E** Nekome, LLC v. Peter Rea and Darlene Rea, Case No. 6:14-cv-03153.

4

weeks of filing suit suggested that the assignments were effected for the purposes of establishing federal diversity jurisdiction and that the parties "have funneled what are essentially local disputes between non-diverse parties into the federal courts," a practice prohibited by 28 U.S.C. §1359. In Canton Indus. Corp. v. Mi-Jack Prod, 944 F. Supp. 853 (1996), the Court dismissed the complaint where an assignment was executed on July 13, 1995 and the suit was filed the next day on July 14, 1995 finding that "[w]hen an assignment is entered into shortly before a diversity action is brought, an inference that the assignment was entered into for the purposes of creating diversity arises." Id. at 858.

In Pac Fin. Corp. v. Patterson Dental Co., 1985 U.S. Dist. LEXIS 21696 (1985), the Court dismissed the complaint by finding that a corporate merger within one week of filing suit was a sham done for the purpose of obtaining federal jurisdiction. Likewise, in Hytken Family Ltd. Schaefer, 431 F. Supp. 696 (2006), the Court found that plaintiff was a Nevada corporation created the day before the suit was filed and was not in existence at the time of the facts giving rise to the lawsuit in support of its holding that an improper and collusive assignment occurred.

Thus, based on the facts and controlling precedent, this Court must conclude from Plaintiff's Complaint that Branson Label, Inc. admittedly has no connection to the facts or transaction giving rise to the lawsuit which arose more than a decade before Branson Label, Inc. (the Florida corporation) was formed. Plaintiff is a stranger to this dispute and the merger was a mere contrivance and pretense as evidenced by the timing of the merger only days before the filing of this lawsuit. This demonstrates that the merger was done as a pretext merely to obtain federal jurisdiction. See also, Madsen v. Am Home Prods. Corp., 477 F. Supp. 2d 1025 (8th Cir. 2007).

5

Case 6:14-cv-03220-GAF   Document 31   Filed 07/09/14   Page 5 of 17

The collusiveness and aim of the Branson Label merger is evident in the record made by Plaintiff's own Suggestions in Response to HCW's Rule 12(b)(1) Motion to Dismiss. (Doc. 27 Page 1-17). In it, Plaintiff describes an entity called Nekome, LLC ("Nekome"[7]) controlled by Marvin Elfant which was to receive 100% of the stock of Branson Label, Inc. in exchange for an agreement to reinstate Branson Label, Inc., to pursue its claims with respect to the Subject Property "with the understanding that the Reas would participate in any recovery." (Doc. 27 Page 5 of 17). Mr. Elfant is the same individual who formed Branson Label, Inc. in Florida just days before suit was filed, its Officer and/or Director, and the only person who signed merger documents on behalf of both companies. These facts and judicial admissions reveal a collusive recovery-sharing agreement that has been barred by the federal courts as a means to create federal jurisdiction.

In <u>Martin Marietta Materials, Inc. v. City of Greenwood</u>, 2007 U.S. Dist. LEXIS 102001; 2007 WL 51937232, the Court analyzed whether there was an improper or collusive assignment of a contract to invoke federal jurisdiction and found that the Court must consider whether the assignor retains a "substantial pecuniary interest in and power of the outcome of the litigation." (citations omitted). Here, Plaintiff admits that Peter Rea (for Branson Label, Inc., the Missouri corporation) retains a pecuniary interest in the outcome of the litigation. (See Response by Plaintiff to HCW's Motion to Dismiss).

In <u>J.F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.</u>, 331 F. sup 1215,1220 (U.S. Distr. W.D. 1971) the Court held that federal jurisdiction is approved where "the assignee has some independent, legitimate interest in the dispute that predates the

---

[7] Nekome means "revenge/vengeance" according to

6

assignment and is not a complete stranger to the original transaction." In the present action, Plaintiff,which was created only days before this suit was filed, has no independent, legitimate interest in the dispute that has been ongoing in Missouri for over a decade and is a total stranger to the original transaction.

In <u>Kramer v. Caribbean Mills, Inc.</u>, 394 U.S. 823, 827 (1969), the United States Supreme Court recognized the ease with which a party can manufacture federal jurisdiction and held that this was the very thing which Congress intended to prevent when it enacted §1359. In what the <u>Kramer</u> Court referred to as the most compelling precedent of the time, <u>Farmington v. Pillsbury</u>, 114 U.S. 138 (1885), the *Kramer* Court described the dispositive facts in <u>Farmington</u> as being that the Maine holders of bonds issued in Maine transferred their bonds to a citizen of Massachusetts, who gave them in return a promissory note and a promise to pay back 50% of the net amount recovered above $500. <u>Id</u>. at 824. The <u>Farmington</u> Court concluded that the transfer was a mere contrivance, a pretense, because of the agreement by which the Massachusetts plaintiff would retain one-half of what he collects and give the other half back to the Maine assignors. <u>Id</u>. The key fact in <u>Farmington</u> involving the retained right to share in the recovery of funds is strikingly similar to the case before this Court.

In <u>Kramer</u>, the Panama and Venezuela Finance Company ("Panama") entered into a contract with a stock purchaser which provided that there would be an initial payment for the stock and annual installments. When no installments were made, Panama assigned its interest in the contract to Texas attorney Kramer who filed suit in his own name in the federal court in Texas. Kramer and Panama had an agreement that they would split the net proceeds of any recovery. <u>Id</u>. at 823. The <u>Kramer</u> Court, adopting and applying the

7

Farmington reasoning, found that the assignment to Kramer, together with his total lack of previous connection with the matter and his simultaneous reassignment of a 95% interest back to Panama (his assignor) revealed that the arrangement was "improperly or collusively" made within the meaning §1359. Where a party has been improperly or collusively made or joined, the primary aim of the transaction is to manufacture federal jurisdiction. Kramer at 828-829.

### IV. Plaintiff's Claim Violates the Statute of Limitations.

Plaintiff's Complaint is also filed outside the applicable statute of limitations. The statute of limitations for real property inverse condemnation action is ten years and accrues on a date when damages are ascertainable or the taking becomes manifest. Shade v. Missouri Highway & Transp. Comm'n, 69 S.W.3d 503,514 (Mo.App.2001). However, just as Plaintiff improperly manufactured diversity jurisdiction, it is also manufacturing a "wrongful taking" date of May 15, 2004 in an effort to avoid the applicable Statute of Limitations. Plaintiffs allege that "Defendants wrongfully entered and took actual possession of the Subject Property commencing May 15th, 2004 ..." (See ¶14 of Complaint). There is no reasonable or factual basis to support May 15, 2004 as the date that Plaintiff's cause of action accrued. The date was simply chosen arbitrarily to avoid the bar to any cause of action for inverse condemnation mandated by the statute of limitations.

The Affidavit of David Miller, City Engineer for the City of Branson, attached hereto as **Exhibit F** and incorporated herein, irrefutably establishes that any activity which would arguably give rise to an inverse condemnation claim occurred long before 2004. Part of the property had been openly used as a city park since 1937. By July 2001, the

8
Case 6:14-cv-03220-GAF   Document 31   Filed 07/09/14   Page 8 of 17

acquisition of the balance of the property claimed by Plaintiff was under contract and by December 2001, all of the closings on the purchases of property had occurred. The redevelopment agreement was signed in July 2003. Most significantly, the demolition of the structures on the property occurred over a period of time extending from October 2002 through March 2003. The date selected by Plaintiff as the date its cause of action accrued is arbitrary, has no basis in fact, and is not supported by the background or by its own allegations.

Based on the known background of the parties involved and the propensity toward litigation the parties exhibit, it is more likely that the May 15, 2004 was chosen as the date the Plaintiff was allegedly damaged because suit was not filed until May 13, 2014. As it claimed in response to HCW's Motion to Dismiss, Branson Label, Inc. had to wait to file this lawsuit until the "merger" could be accomplished. (See Doc. 27 Pages 1-17). It is obvious that May 15th was arbitrarily chosen to avoid the statute of limitations defense.

The statute of limitations for the unjust enrichment claim that Plaintiff asserts in Count II is 5 years. See RSMo. §516.120. Plaintiff has clearly violated this statute as to Count II.

### V. Plaintiff Lacks Standing.

#### A. The "Chain of Title" is broken.

Standing generally requires that a plaintiff demonstrate: (1) he or she suffered an "injury-in-fact"; (2) a causal relationship between injury and the challenged conduct; and (3) that the injury is one that can be likely be redressed by a favorable decision. Steger v. Franco, Inc., 228 F.3d 889,892 (8th Cir. 2000). In addition, to have standing to sue for inverse condemnation, one must own the property at the time the property

9

damages occur. State ex rel. City of Blue Springs v. Nixon, 250 S.W.3d 365,369 (Mo 2008). The fact is that Plaintiff has never held title to the property that is the subject of this suit. Moreover, Plaintiff does not meet the ownership threshold by its Complaint and it is essentially attempting to litigate yet another quiet title action (without filing one) boldly claiming to be the owner of the property based on a chain of title dating back to 1957 when in fact Plaintiff admits that its predecessors, the Hokes, did not hold record title to all of the property that is the subject of this action.

The Affidavit of Peter H. Rea filed in the matter of The Empire District Electric Company v. The Branson Paper, Inc. et al., bearing Taney County cause #03CV-787034 is fatal to Plaintiff's allegations (the "**Rea Affidavit**"). A true and accurate copy of the Rea Affidavit is attached hereto as **Exhibit I** and incorporated herein. The Affidavit, made by Peter Rea and his wife as statutory trustees for Branson Label, Inc. clearly contradicts the Plaintiff's allegation that the Reas transferred title to Branson Label, Inc. As the affidavit of the alleged grantor to Plaintiff, this affidavit attests under oath that Branson Label, Inc. was never conveyed title. This is yet another failure in the claim to ownership asserted by Plaintiff herein. Among other admissions in the Rea Affidavit, Rea makes the sworn statement that the land was sold, conveyed and transferred from Branson Label, Inc. [and/or other entities he controlled] to Douglas Coverdell on September 3, 1999 and that "we disavow any subsequent actions we, or either one of us individually, may have taken subsequent to that date [September 3, 1999]. With Plaintiff's predecessor (owned by Peter Rea) having disclaimed any interest in the Subject Property on behalf of Branson Label, Inc. and the other Rea entities, Plaintiff, as successor by merger, cannot now claim title to this very same land disclaimed by its predecessor.

Despite Plaintiff's recitations of legal descriptions and references to deeds and prior transfers, a careful reading of the Plaintiff's Complaint reveals that Plaintiff has not, and frankly cannot, identify the land that allegedly makes up the "Subject Property". As the Court will note, Plaintiff claims that a portion of its title begins with the 1957 Hoke to Tori, Inc. Deed.[8] See Complaint at ¶ 11 a. The State Court Judgment attached hereto as Exhibit _____ finds specifically:

> Despite the prior conveyance of their interests, on May 1, 1972, the Hokes purported to convey certain property which arguably includes the Eastern Peninsula and other lands to Tori, Inc. Coverdells' and CBO's claims to the Eastern Peninsula are as successors of the interests of Tori, Inc., based on a 1999 warranty deed to them from Tori, Inc. However, since the Hokes had no record title in the Eastern Peninsula in 1972, neither Tori, Inc., the Coverdells, nor CBO ever acquired any record title to that tract.

By Plaintiff's own allegations, its title originates with the Hoke to Tori, Inc. deed which has already been adjudicated by the State Court to convey nothing. Plaintiff's chain of title, and its claim to ownership breaks down completely on this point.

Plaintiff's Complaint states that "*the Hokes acquired additional property adjacent to the property described in the 1957 deed through adverse possession*". In the history of the litigation involving Branson Landing no record can be found that the Hokes ever made such a claim. Branson Label's "ownership" of the land it is claiming breaks down completely on this point.

Another cornerstone upon which Plaintiff basis is claims to ownership (and therefore standing) is a Taney County Circuit court Judgment entered in 1995. To address

---
[8] See Empire District Electric Co. v. Coverdell, et al., 344 S.W.3d 842 (Mo.App. S.D. 2010).

an error made by Peter Rea, in one of the numerous deeds he recorded concerning property on the Branson Landing, instituted a "friendly suit" by and between he and his wife Darlene as plaintiffs and Branson Label, Inc., his own Missouri corporation, as the defendant seeking to have the "*the correction deed…ordered to be of no force or effect and…stricken from the records so that The Branson Label [Missouri] owns all of the lands except the lands owned by the children of Peter H. Rea…*" (the "**Rea Friendly Suit**"). A true and accurate copy of the Petition filed in the Rea Friendly Suit is attached hereto as **Exhibit** G and is incorporated herein by reference as if fully set forth. While the errors made by Rea in the "corrective deed" are immaterial for purposes of this lawsuit, the judgment resulting in the Rea Friendly Suit is repeatedly referred to by Plaintiff as the basis of its title in this case. See the Complaint at ¶ 12. Because Article III requires an actual "case or controversy", a district will not entertain matters commenced by litigants with the same goals in mind. Pennsylvania Ass'n for Retarded Children v. Pennsylvania, 343 F. Supp. 279, 290 (E.D. Pa. 1972); United States v. Johnson, 319 U.S. 302, 305 (1943) (federal courts will not entertain friendly suits, or those which are feigned or collusive in nature because the Constitution demands a "honest and actual antagonistic assertion of rights.").

The Rea Friendly Suit was uncontested and brought between Peter Rea's Corporation, Branson Label, Inc., predecessor to the Plaintiff herein, and against Peter Rea and his wife. There was no merit to the suit that resulted in a friendly judgment. See **Exhibit H** –Judgment, a copy of which is attached hereto and incorporated herein. Despite these actual facts, Plaintiff makes its allegations in a way that plainly misleads the Court into believing that some portion of the Branson Landing development was adversely

possessed by the Hokes—which it was not, and that the Rea Friendly Suit was an actively litigated, adversarial proceeding that resulted in a favorable judgment for Rea that quieted title to the property described in the Hoke/Tori Deed. It has not. Because Plaintiffs' claim to ownership is based in large part on this judgment, under its own allegations, its claims must fail.

By its allegations, Plaintiff contends it is a corporation formed in Florida only days before suit was filed and it was not in existence on May 15, 2004, the alleged date damages occurred. Although it alleges it succeeded to the interest of Branson Label, Inc., the dissolved then revived Missouri corporation, through a merger, the allegation and the transaction itself is a pretext. As a dissolved corporation, Branson Label, Inc. had no assets, no liabilities, and no interest to transfer except this cause of action. The purported merger was a substitute for a quit claim deed for the property claimed which would have entitled the successor to nothing except this same cause of action. The plaintiff here is clearly a subsequent grantee barred from recovering damages for inverse condemnation. See Blue Springs, supra at 371.

**B. The Complaint does not describe the land claimed with specificity.**

Plaintiff refers to the "Subject Property" as if it is a fixed plot of land, without ever properly identifying and defining its boundaries. Further, the complaint does not describe nor identify the land allegedly adversely possessed by the Hokes. Missouri law expressly requires a party claiming title to property under adverse possession to set forth the precise boundaries of the property claimed. Weaver v. Helm, 941 S.W.2d 801, 805 (Mo. App. S.D. 1997). Absent such precision, no finding of adverse possession is possible. Id. See also, Teson v. Vasquez, 561 S.W.2d 119 (Mo. App.

E.D. 1977) (one overriding requirement to establish adverse possession to a particular piece of property is that the precise location of the land claimed be identified in such a way that the boundaries may be ascertained and recognized). Plaintiff has not set forth the precise boundaries or location of the alleged "*…additional property adjacent to the property described in the 1957 deed…*" in any manner as required by law, let alone one specific and definite enough to support a claim of adverse possession. As such, the Plaintiff's Complaint fails to state a claim and must be dismissed. Id.

### C. Plaintiff has no standing to sue for inverse condemnation damages.

To sue for inverse condemnation, one must own the property at the time the property damages occur. State ex rel. City of Blue Springs v. Nixon, 250 S.W.3d 365,369 (Mo 2008). There, the Supreme Court of Missouri declared that any cause of action for inverse condemnation was vested only in **the owners of the real property at the time the taking occurred**. Any subsequent grantee could not recover damages for inverse condemnation. See Blue Springs at 370.

By its allegations, Plaintiff contends it is a corporation formed in Florida only days before suit was filed and it was not in existence on May 15, 2004, the alleged date damages occurred. Although it alleges it succeeded to the interest of Branson Label, Inc., the dissolved then revived Missouri corporation, through a merger, the allegation and the transaction itself is a pretext. As a dissolved corporation, Branson Label, Inc. had no assets, no liabilities, and no interest to transfer except this cause of action. The purported merger was a substitute for a quit claim deed for the property claimed which would have entitled the successor to nothing except this same cause of action. The

plaintiff here is clearly a subsequent grantee barred from recovering damages for inverse condemnation.

> VI. **The Claims of Branson Label are within the exclusive jurisdiction of State Court.**

Branson Label, Inc., the Missouri corporation, through Peter Rea, had improperly attempted to interject himself in the Taney County suit and his motion was denied, but never appealed. Branson Label, Inc. never appealed the Order of Denial - See **Exhibit D**. When a movant claims intervention as a matter of right under Rule 52.12(a), the denial of that motion is a final and appealable judgment pursuant to Section 512.020(5). See also Eckhoff v. Eckhoff, 242 S.W.3d 466, 469 (Mo.App. W.D. 2008); State ex rel. Reser v. Martin, 576 S.W.2d 289 (Mo. 1978). Mo. Sup. Ct. R. 81.04(a) requires an appellant to file his notice of appeal no later than 10 days after a judgment or order becomes final. Branson Label, Inc. was denied intervention on December 14, 2009. Branson Label, Inc. failed to appeal by Jan 25, 2010 and is barred from asserting a claim now.

Thus, years ago, The Branson Label, Inc. attempted to intervene in the litigation which determined whether or not the Hokes could convey any property interest to Tori, Inc. in 1972. The appellate court found then that The Branson Label, Inc. did not have an interest and denied its motion. The Branson Label, Inc. never appealed and lost its right to assert any interest in the property long prior to the alleged "sale" of stock to Nekome, LLC and its "merger" with The Branson Label, Inc., a Florida corporation. Resultingly, the prior exclusive jurisdiction doctrine would bar Plaintiff's claims asserted herein. See Wang Xang Xiong v. Bank of America, N.A., 2012 U.S. District. LEXIS 140 454; 2012 WL 4470281. The doctrine holds that when one court has exercised *in ren* jurisdiction

15

over a *res*, a second court will not assume *in ren* jurisdiction over the same *res*. See Chapman v. Deutsche Bank Nat'l Trust Co., 651 F.3d 1039, 1043 (9th Cir. 2011) (quoting Marshall v. Marshall, 547 U.S. 293, 311, 126 S. Ct. 1735, 164, L., Ed. 2d 480 (2006). The claims asserted in Plaintiff's Complaint are within the jurisdiction of the state court.

## Conclusion

Based on the foregoing facts and controlling law, this case must be dismissed with prejudice.

Respectfully submitted,

/s/ William L. Sauerwein
William L. Sauerwein, # 37523MO
John H. Hein, #53182MO
147 N. Meramec Avenue
St. Louis, Missouri 63144
Telephone: (314) 863-9100
Facsimile: (314) 863-9101
Email: wls@sauerwein.com
jjh@sauerwein.com
***Attorneys for Defendant The City of Branson, Missouri***

## Certificate of Service

The undersigned hereby certifies that on July 9, 2014, the foregoing was filed with the Clerk of the Court using the CM/ECF filing system which sends notification of such filing to the following:

Randy P. Scheer
S. Jacob Sappington
Sanders, Warren & Russell LLP
901 E. St. Louis Street, Suite 1800
Springfield, Missouri 65806
**Attorneys for Plaintiff**

Paul T. Fox
Gregory E. Ostfield
Paul A. Del Aguila
Brett M. Doran
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
**Attorneys for Plaintiff**

Daniel J. Welsch
Summers Compton Wells LLC
8909 Ladue Road
St. Louis, Missouri 63124
**Attorneys for HCW Entities**

Dan Nelson
Joshua B. Christensen
Lathrop & Gage LLP
910 E. St. Louis, Suite 100
Springfield, Missouri 65806
**Attorneys for Empire Distr. Electric Co.**

/s/ William L. Sauerwein