IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE BRANSON LABEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-03220-CV-S-GAF |
| | ) | |
| CITY OF BRANSON, MISSOURI, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Presently before the Court are three Motions to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The first is filed by Defendants HCW Development Company, LLC; HCW Private Development, LLC; and HCW North, LLC; the second is filed by Defendant Empire District Electric Co ("Empire District"); and the third is filed by Defendant City of Branson, Missouri (the "City").[1] (Docs. ## 21, 23, 30). Plaintiff The Branson Label, Inc. ("Plaintiff") opposes. (Docs. ## 27, 29, 40). For the reasons set forth below, Defendants' Motions are GRANTED.

## DISCUSSION

### I. FACTS

This case involves a dispute over real property (the "Property") located in Taney County, Missouri. (Complaint). Plaintiff claims that it holds title to the Property and brings a claim of Inverse Condemnation against Empire District and the City and a claim of Unjust Enrichment against all Defendants. (*Id.* at Counts I-II).

---

[1] HCW Development Company, LLC; HCW Private Development, LLC; and HCW North, LLC are collectively referred to as "HCW." HCW, Empire District, and the City are collectively referred to as "Defendants."

Plaintiff claims that on February 15, 1957, W.F. Hoke and Vera H. Hoke (collectively the "Hokes") held title to a portion of the Property by recorded deed and title to the remainder through adverse possession. (*Id.* ¶ 11(a)). Thereafter, Plaintiff claims the Hokes transferred the Property to Tori, Inc. ("Tori") on May 10, 1972. (*Id.* ¶ 11(b)). Plaintiff next claims Tori was administratively dissolved or its corporate franchise was forfeited in 1987. (*Id.* ¶ 11(c)). According to Plaintiff, the statutory trustees of Tori were Karen and Peter Rea. (*Id.*). In 1987, Karen Rea allegedly conveyed her interest in the Property to Peter Rea, and in 1988, Peter Rea conveyed the Property to himself and Darlene Rea. (*Id.* ¶ 11(d)-(e)). Thereafter, Plaintiff claims that on June 23, 1992, Peter and Darlene Rea conveyed the Property to The Missouri Branson Label.[2] (*Id.* ¶ 11(f)).

The Missouri Branson Label's principal place of business from 1992 through 1994 was in Branson, Missouri. (1992-1994 Annual Registration of Business). In 1995, it was administratively dissolved or revoked for failing to file a correct annual report to the Missouri Secretary of State. (Administrative Dissolution or Revocation for a For-Profit Corporation). On July 8, 2013, The Missouri Branson Label was re-instated and filed its annual reports for 1995 through 2013. (Certificate of Rescission; 1995-2013 Annual Registration Reports). On May 2, 2014, Peter and Darlene Rea transferred 100% of the stock in The Missouri Branson Label to Nekome, LLC ("Nekome").[3] (Declaration of Marvin Elfant ("Elfant Decl.") ¶ 14). As part of

---

[2] There are two corporations named The Branson Label, Inc. involved in this lawsuit. The first was organized in Missouri on May 7, 1992. (The Branson Label, Inc. Articles of Incorporation). This corporation will be referred to as "The Missouri Branson Label." The second corporation was incorporated in Florida on May 8, 2014. (The Branson Label, Inc. Articles of Incorporation). This corporation is the plaintiff in this lawsuit and will be referred to as "Plaintiff."

[3] Marvin Elfant ("Mr. Elfant") is the sole member of ME Holding, LLC, which in turn is the sole member of Nekome. (Declaration of Marvin Elfant ¶¶ 3-4).

the consideration for this transfer, Peter and Darlene Rea are to participate in any recovery that results from Plaintiff pursuing The Missouri Branson Label's claims with respect to the Property. (*Id.* ¶ 6).

On May 8, 2014, Nekome incorporated Plaintiff in Florida. (The Branson Label, Inc. Articles of Incorporation; Elfant Decl. ¶ 26). Plaintiff alleges its principal place of business is also in Florida. (Complaint ¶ 4). On May 9, 2014, The Missouri Branson Label merged into Plaintiff. (Certificate of Merger, Foreign Entity Surviving). Mr. Elfant is the only signatory on the signature lines of the Articles of Merger, signing as president of both The Missouri Branson Label and Plaintiff. (Articles of Merger).

Mr. Elfant claims this merger was based "on business considerations, not its impact on diversity jurisdiction." (Elfant Decl. ¶ 26). He claims that Nekome's tax advisor recommended the merger. (*Id.* ¶ 19; *see* April 25, 2014 Letter from Levin & Seltzer LLP to Marvin Elfant). He claims the tax advisor made this recommendation for two reasons: (1) because neither he, Nekome, nor any of his other business entities had any other operations, assets, or presence in Missouri and (2) because Florida S-Corporations are usually exempt from income tax and thus, the merger would allow the income derived from The Missouri Branson Label to avoid Missouri income tax. (Elfant Decl. ¶¶ 23-24; *see* April 25, 2014 Letter from Levin & Seltzer LLP to Marvin Elfant). Mr. Elfant claims that the business activities of Plaintiff have included: "directing and overseeing this lawsuit and a second lawsuit pertaining to the Subject Property; . . . conferring with and directing counsel in connection with the[se lawsuits]; reviewing and revising pleadings, declarations and other court papers in connection with the[se lawsuits]; and funding the[se lawsuits.]" (Elfant Decl. ¶ 30). Plaintiff filed its Complaint in the current case on May 13, 2014. (Complaint).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a complaint if it lacks jurisdiction. When considering a Rule 12(b)(1) motion, a court may consider matters outside the pleadings because the court has "'substantial authority . . . to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "The burden of persuasion for establishing diversity jurisdiction . . . remains on the party asserting it" and must be supported by "competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

## III. ANALYSIS

Federal courts are courts of limited jurisdiction. *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009). Federal courts "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 [federal question jurisdiction] and 1332 [diversity jurisdiction]." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). Diversity jurisdiction exists if there is complete diversity amongst the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Complete diversity amongst the parties exists "'where no defendant holds citizenship in the same state where any plaintiff holds citizenship.'" *Cascades Dev. of Minn., LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1098 (8th Cir. 2012) (quoting *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010)). For diversity considerations, a corporation is considered a citizen of every state where it is incorporated and also the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

Plaintiff alleges the diversity of citizenship requirement of § 1332 is satisfied because it is a Florida citizen and Defendants are all Missouri citizens. (Complaint ¶¶ 1, 4-9). However, absent the merger of The Missouri Branson Label into Plaintiff, no diversity jurisdiction would exist because The Missouri Branson Label was incorporated in Missouri and was therefore a Missouri citizen. (*See* The Branson Label, Inc. Articles of Incorporation).

Under 28 U.S.C. § 1359, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." Thus, "[t]ransfers or assignments that have the effect of creating federal jurisdiction raise a red flag and, thus, need to be examined with care." *McCulloch v. Velez*, 364 F.3d 1, 6 (1st Cir. 2004). Section 1359 is triggered "when the primary aim of [a business] transaction is to manufacture federal jurisdiction." *Madsen v. Am. Home Prods. Corp.*, 477 F. Supp. 2d 1025, 1031 (E.D. Mo. 2007). Courts consider six factors "[i]n determining whether diversity jurisdiction has been created in an improper or collusive manner." *Hytken Family Ltd. v. Schaefer*, 431 F. Supp. 2d 696, 699 (S.D. Tex. 2006). These factors are:

> (1) whether there was nominal or no consideration involved in the assignment; (2) whether the assignee had any previous connection to the assigned claim; (3) whether there was a legitimate business reason for the assignment; (4) whether the timing of the assignment suggests it was merely an effort to secure federal diversity jurisdiction; (5) whether the assignor exercises any control over the conduct of the litigation; and (6) whether the assignor retains any interest in the action such as receiving a portion of the assignee's recovery.

*Id.* at 699-700; *Long & Foster Real Estate, Inc. v. NRT Mid-Atlantic, Inc.*, 357 F. Supp. 2d 911, 922-923 nn. 23-27 (E.D. Va. 2005) (compiling cases applying these factors).

First, the Court considers whether there was adequate consideration involved in the assignment. Here, there was no consideration given for the merger. In fact, this was a merger between two corporations both wholly owned by another entity, which in turned was wholly

5

owned by a single individual. Accordingly, the first factor favors finding that diversity jurisdiction has been created in an improper or collusive manner.

Second, the Court considers whether Plaintiff had any previous connection to the assigned claim. Again, this factor cuts against Plaintiff. Plaintiff has no connection to Missouri whatsoever outside of this cause of action. Moreover, Plaintiff existed less than a week before its merger with The Missouri Branson Label. Accordingly, the second factor also favors finding that diversity jurisdiction has been created in an improper or collusive manner.

Third, the Court considers whether there was a legitimate business reason for the merger. In a case where diversity exists as the result of a corporate merger, the party asserting diversity jurisdiction "is required to demonstrate a legitimate, non-pretextual reason for the merger." *Madsen*, 477 F. Supp. 2d at 1031. To satisfy this requirement, the merger must be for "sufficiently compelling" business reasons, such that "the merger would have been made absent the purpose of gaining a federal forum." *Id.* Further, the Court should apply "elevated scrutiny to assignments between affiliated parties" and require the party asserting diversity jurisdiction "'establish that the reason is legitimate and not pretextual.'" *See Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640, 643-44 (1st Cir. 1995) (quoting *Yokeno v. Mafnas*, 973 F.2d 803, 810 (9th Cir. 1992)) (compiling citations from cases with similar requirements); *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 475 (2d Cir. 1976) ("The scrutiny normally applied to transfers or assignments of claims which have the effect of creating diversity must be doubled in the case of assignments between related or affiliated corporations since common ownership . . . only serves to increase the possibility of collusion and compound the difficulty encountered in detecting the real purpose of the assignment."). Moreover, because assignments between related parties "are highly suspect, they are presumptively ineffective to create diversity jurisdiction."

6

*McCulloch*, 364 F.3d at 6.

An analogous merger arose in *Toste*. There, a Rhode Island corporation was formed in order to develop Rhode Island land. 70 F.3d at 641. The Rhode Island corporation subsequently merged with a New York corporation, and one month after the merger, the surviving New York corporation filed suit in federal court against Rhode Island's defendants, claiming diversity jurisdiction. *Id.* at 641-42. The plaintiffs admitted that one purpose of the merger was to manufacture diversity for the case but also claimed "that the merger served the administrative convenience of [the plaintiff's sole owner] whose residence and other business activities were in New York." *Id.* at 642. The trial court held that diversity jurisdiction may exist if the New York corporation "engage[d] in an ongoing business" but not "if the only asset that the New York corporation acquired by merger was the claim which is the subject of the this suit, and if that claim is the only asset of [the New York corporation.]" *Toste Farm Corp. v. Hadbury, Inc.*, 882 F. Supp. 240, 245 (D.R.I. 1995). The First Circuit affirmed, finding that "[t]he district court justifiably concluded that there was a manufactured assignment concocted and designed by a single individual using the diversity statute as a ploy to create jurisdiction." *Toste*, 70 F.3d at 645 (quoting *Toste*, 882 F. Supp. at 247) (internal quotation marks omitted).

Just as in *Toste*, there does not appear to be a legitimate business reason for the merger in the present case. The only business Plaintiff claims to be doing is "directing and overseeing this lawsuit and a second lawsuit pertaining to the Subject Property; . . . conferring with and directing counsel in connection with the[se lawsuits]; reviewing and revising pleadings, declarations and other court papers in connection with the[se lawsuits]; and funding the[se lawsuits.]" (Elfant Decl. ¶ 30). Plaintiff conducted no business prior to its merger with The Missouri Branson Label, and the only business Plaintiff has conducted after the merger is pursuing a lawsuit

7

previously owned by The Missouri Branson Label, but which could not be brought in federal court when owned by The Missouri Branson Label. It appears that Nekome incorporated Plaintiff solely to handle the litigation of The Missouri Branson Label, another corporation wholly owned by Nekome, to manufacture diversity jurisdiction. Plaintiff claims that purported business reasons for the merger were to convenience Mr. Elfant and for perceived tax advantages. However, considering the totality of the situation, these reasons appear to be "make-weights" and "[t]he significant reason [for the merger] appears to be the improper one: 'to invoke the jurisdiction' of the federal court." *See Toste*, 70 F.3d at 645. Accordingly, the third factor also favors finding that diversity jurisdiction has been created in an improper or collusive manner.

Fourth, the Court considers whether the timing of the assignment suggests it was merely an effort to secure federal diversity jurisdiction. Here, the timing of the merger also cuts against Plaintiff. *See W. Farm Credit Bank v. Hamakua Sugar Co., Inc.*, 841 F. Supp. 976, 984 (D. Haw. 1994) ("When an assignment is entered into shortly before a diversity action is brought, an inference that the assignment was entered into for the purposes of creative diversity arises."). In this case Plaintiff was incorporated on May 7, 2014, The Missouri Branson Label merged with Plaintiff on May 9, 2014, and Plaintiff filed this diversity action on May 13, 2014. The alacrity with which Plaintiff acted to file suit in a federal forum raises further doubt about whether the merger was truly enacted for a legitimate, non-pretextual business purpose. *See Wiregrass Homebuilders, Inc. v. Inv. Acquisitions Grp., LLC*, Civ. No. 1:09CV256-HSO-JMR, 2011 WL 3349823 (S.D. Miss. Aug. 2, 2011) (stating that litigation initiated within seven weeks of the assignment in question "suggests that [the assignment was] obtained merely in an effort to secure federal diversity jurisdiction"); *Canton Indus. Corp. v. Mi-Jack Prods., Inc.*, 944 F. Supp. 853,

8

858 (D. Utah 1996) (one day); *Hytken*, 431 F. Supp. 2d at 702 (same day). Accordingly, the fourth factor also favors finding that diversity jurisdiction has been created in an improper or collusive manner.

Fifth, the Court considers whether the assignor exercises any control over the conduct of the litigation. Immediately prior to the merger, Nekome owned 100% of the stock of both the Missouri Branson Label and Plaintiff. (Elfant Decl. ¶ 14). The Articles of Merger was signed only by Mr. Elfant, as both president of The Missouri Branson Label and Plaintiff. (Articles of Merger). Therefore, although The Missouri Branson Label no longer exists as a separate corporate entity, Nekome owned 100% of its stock prior to the merger, and Nekome still controls the litigation through its ownership of Plaintiff. Accordingly, the fifth factor also favors finding that diversity jurisdiction has been created in an improper or collusive manner.

Sixth, the Court considers whether the assignor retains any interest in the action such as receiving a portion of the assignee's recovery. As discussed above, any recovery in this case will benefit Nekome (and thus, ultimately benefit Mr. Elfant), the 100% owner of both The Missouri Branson Label and Plaintiff prior to their merger. Further, as part of the consideration Nekome gave Peter and Darlene Rea to transfer the stock of The Missouri Branson Label to Nekome, Peter and Darlene retained the right to participate in any recovery Plaintiff obtains regarding The Missouri Branson Label's claims with respect to the Property. (Elfant Decl. ¶ 6). Thus, this last factor also weighs in favor of finding that diversity jurisdiction has been created in an improper or collusive manner.

Therefore, after analyzing the factors considered in determining whether diversity jurisdiction has been created in an improper or collusive manner, this Court finds that each factor weighs towards the conclusion that this Court does not have jurisdiction over Plaintiff's claims.

9

Accordingly, Plaintiff has failed to demonstrate by competent proof that diversity exists in the present case, and it must be dismissed for lack of subject-matter jurisdiction.[4]

## CONCLUSION

By statute, a district court does not have jurisdiction if any party has been improperly or collusively made or joined to invoke the jurisdiction of such court. Here, each of the six factors considered in determining whether diversity jurisdiction has been created in an improper or collusive manner weighs towards finding that this Court does not have subject-matter jurisdiction over Plaintiff's claims. Accordingly, for these reasons and the reasons set forth above, Defendants' Motions to Dismiss pursuant to Rule 12(b)(1) are GRANTED. Plaintiff's claims against Defendants are DISMISSED.

**IT IS SO ORDERED.**

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: July 30, 2014

---

[4] Also before the Court are HCW's and the City's Motions to Dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docs. ## 19, 32) However, as the Court lacks subject-matter jurisdiction over Plaintiff's claims, the Court cannot decide any motions disposing of Plaintiff's claims on the merits. Accordingly, HCW's and the City's Motions to Dismiss (Docs. ## 19, 32) are DENIED.